IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| OSCAR C. HERNANDEZ,<br><br>Plaintiff,<br><br>vs.<br><br>HORMEL FOODS CORPORATION,<br><br>Defendant. | 8:17-CV-50<br><br>MEMORANDUM AND ORDER |

The plaintiff, Oscar Hernandez, is suing his employer Hormel Foods Corporation for allegedly discriminating against him on the basis of his disability and national origin. Hernandez also alleges that he was retaliated against after filing a workers' compensation claim.

This matter is before the Court on Hormel Foods' motion for summary judgment (filing 45). For the reasons set forth below, the Court will grant Hormel Foods' motion for summary judgment in its entirety.

## BACKGROUND

Hernandez is of Mexican origin. Filing 47 at 30. He is currently employed by Hormel Foods at a meat processing facility located in Fremont, Nebraska. *See* filing 47 at 78; *see also* filing 54 at 2. Hernandez has worked for Hormel Foods for nearly fourteen years as a "belly trimmer." Filing 46 at 6; filing 47 at 8. In his "belly trim" position, Hernandez is primarily responsible for using an electric "whizard" knife to trim fat patches from the pork bellies as they proceed on the production line. Filing 47 at 7; 80.

On January 23, 2015, Hernandez suffered a left shoulder injury. Filing 47 at 14. This injury was reported to his supervisor and Hernandez received treatment at the Hormel Foods infirmary. Filing 47 at 14. Over the next

several months, however, Hernandez's shoulder pain became progressively worse. Filing 47 at 15.

So, on July 16, 2015 Hernandez was evaluated by orthopedic specialist Dr. Kirk Hutton. Filing 15 at 2. Dr. Hutton opined that Hernandez had a "[p]robable rotator cuff" tear and suggested that Hernandez schedule an MRI. Filing 51 at 4. Until then, Dr. Hutton stated that he would "allow [Hernandez] to continue to work" so long as work was done "below shoulder level and close to his body." Filing 51 at 4. A few weeks later, the results of Hernandez's MRI confirmed Dr. Hutton's suspicions: Hernandez had "significant tearing of two tendons of the rotator cuff" and surgery was scheduled for late November. Filing 52 at 2. Until surgery, Hernandez remained on a "[ten] pound lifting maximum" and was ordered to "keep[] work below shoulder level, and within 18" of [his] body." Filing 52 at 2.

Hernandez claims that Hormel Foods did not respect his work restrictions from July 16, 2015 (*i.e.,* when his rotator cuff tear was first diagnosed) until November 5, 2015 (*i.e.,* just before he underwent shoulder surgery).[1] *See* filing 15 at 1-2. As such, Hernandez filed an employment discrimination charge with the Nebraska Equal Opportunity Commission and the federal Equal Employment Opportunity Commission, which dismissed his charge. Filing 15 at 2-3. Hernandez filed this suit asserting claims under 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

---

[1] The Court acknowledges that the record contains some information concerning Hernandez's accommodations following surgery. But because the complaint only alleges that discrimination occurred from July 16, 2015 until November 5, 2015—well before Hernandez returned to work following surgery—this Memorandum and Order will not address, or consider, those allegations. *See* filing 15 at 1.

2

(as amended by the ADA Amendments Act of 2008 (ADAAA), Pub. L. No. 110-325, 122 Stat. 3553 (2008)). Filing 15 at 5. He also asserts state-law claims under the Nebraska Fair Employment Practice Act (NFEPA) Neb. Rev. Stat. § 48-1101 *et seq.*, and common law workers' compensation retaliation. Filing 15 at 4. Hormel Foods has moved for summary judgment on those claims.

## STANDARD OF REVIEW

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.*

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id.* Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id.* But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Id.* In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. *Quinn v. St. Louis County*, 653 F.3d 745, 751 (8th Cir. 2011). The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmovant. *Barber v. C1 Truck Driver*

3

*Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042.

## DISCUSSION

Although brought under different theories of recovery, Hernandez's allegations can be grouped into three general categories: disability discrimination, national origin discrimination, and workers' compensation retaliation. The Court will discuss each of those claims in turn below.

### DISABILITY DISCRIMINATION

Generally speaking, Hernandez contends that Hormel Foods discriminated against his disability (*i.e.,* his shoulder injury). Filing 15 at 1. More specifically, Hernandez claims that his "belly trim" position violated his doctor-imposed work restrictions and as such, Hernandez argues that he should have been transferred to a less strenuous position. Filing 52 at 2; *see also* filing 47 at 67. By failing to transfer him, Hernandez claims Hormel Foods violated the ADA and the NFEPA. Filing 54 at 8.

Hernandez's ADA and NFEPA claims are functionally identical, so the Court will consider them together. *See Orr v. Wal-Mart Stores, Inc*., 297 F.3d 720, 723 (8th Cir. 2002). An employer may not refuse to hire a qualified individual because he has a disability. *Kallail v. Alliant Energy Corp. Servs*., Inc., 691 F.3d 925, 933 (8th Cir. 2012). An employer also discriminates against an applicant or employee if the employer does not make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability. *Dick v. Dickinson State Univ*., 826 F.3d 1054, 1059 (8th Cir. 2016). Discrimination under the ADA encompasses both disparate treatment because of a disability and failure to provide reasonable accommodations to a qualified individual's known disability—the former

4

requires proof of discriminatory intent, while the latter does not. *Withers v. Johnson*, 763 F.3d 998, 1003 (8th Cir. 2014).

To establish a prima facie case of disability discrimination, a plaintiff must show: (1) that he was disabled, (2) that he was qualified to do the essential job function with or without reasonable accommodation, and (3) that he suffered an adverse action due to his disability. *Dick*, 826 F.3d at 1059. To support a failure to accommodate claim, the plaintiff must establish both a prima facie case of discrimination based on disability and a failure to accommodate it. *See Kelleher v. Wal-Mart Stores, Inc.*, 817 F.3d 624, 631 (8th Cir. 2016).

Hormel Foods argues that Hernandez's disability claim fails, as a matter of law, for at least two reasons. First, Hormel Foods contends that Hernandez is not disabled within the meaning of the ADA. *See* filing 46 at 18. And alternatively, Hormel Foods argues that even if Hernandez was disabled, he did not, and has not, suffered any adverse employment action as a result of that disability. *See* filing 46 at 19. In particular, Hormel Foods points out that the only allegations of discrimination occurred between July 16, 2015 and November 5, 2015—a time period that Hernandez was neither demoted nor discharged from his "belly-trim" position. Filing 46 at 19.

Hormel Foods's former contention is easily disposed of, so the Court will begin there. Generally speaking, Hormel Foods claims that Hernandez is not disabled because his shoulder injury has not limited any major life activity. Filing 46 at 18. That is, Hormel Foods argues that Hernandez's ability to walk, stand, reach, lift, speak, or care for himself has not been negatively impacted in any way. Filing 46 at 18. Hernandez, on the other hand, claims that his major life activities are limited following his injury. Filing 54 at 8. Specifically, Hernandez claims that before undergoing surgery, it was extremely difficult

for him to lift and reach. Those activities, Hernandez suggests, constitutes major life activities and render him disabled. *See* 29 C.F.R. § 1630.2; *see also* filing 54 at 8.

The ADA defines a disabled person as an individual with a physical or mental impairment that substantially limits one or more of that person's major life activities, an individual who has a record of such an impairment, or an individual who is regarded as having such an impairment. *See* 42 U.S.C. § 12102(1). Under pre-ADAAA law, temporary impairments with little or no long-term impact were not disabilities. *See Samuels v. Kansas City Missouri Sch. Dist.*, 437 F.3d 797, 802 (8th Cir. 2006). The ADAAA, however, expanded the definition of a disability, and requires it to be construed in favor of broad coverage. *See Rotkowski v. Arkansas Rehab. Servs.*, No. 3:15-CV-03085, 2016 WL 1452426, at *4 (W.D. Ark. Apr. 13, 2016); *see also* Regulations To Implement the Equal Employment Provisions of the Americans With Disabilities Act, as Amended, 76 Fed. Reg. 16,978 (Mar. 25, 2011) ("Implementing Regulations"). And, post-ADAAA, the effects of a temporary impairment can be substantially limiting for ADA purposes. *Id.* at 17,012; *accord Dykstra v. Florida Foreclosure Attorneys, PLLC*, No. 15-81275-CIV, 2016 WL 1644069, at *7 (S.D. Fla. Apr. 26, 2016).

Under the ADAAA and its implementing regulations, an impairment is not categorically excluded from being a disability simply because it is temporary. *Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 333 (4th Cir. 2014); *accord Geter v. Gov't Publ'g Office*, No. CV 13-916, 2016 WL 3526909, at *9 (D.D.C. June 23, 2016). Indeed, a short-term impairment may qualify as a disability if it is "sufficiently severe." *See* 29 C.F.R. § Pt. 1630, App. For example, "if an individual has a[n] impairment that results in a 20–pound lifting restriction that lasts for several months, he is substantially limited in

6

the major life activity of lifting, and therefore covered under the first prong of the definition of disability." *Id.*, *accord Summers*, 740 F.3d at 329.

And that is nearly the precise scenario at issue here: Hernandez suffered a shoulder injury resulting in a ten-pound lifting restriction which lasted over six months. *See* filing 51 at 2-4; filing 52 at 2. That injury substantially limited the major life activity of lifting—thus, the Court finds that Hernandez was disabled for purposes of his ADA claim. *See Matthews v. Pa. Dep't of Corr.*, 613 F. App'x 163, 168 (3d Cir. 2015); *Summers v. Altarum Inst.*, 740 F.3d 325 (4th Cir. 2014).

Nevertheless, Hernandez's disability discrimination claim still fails as a matter of law. As noted above, to establish a prima facie case of disability discrimination, the plaintiff must also demonstrate that he suffered an adverse employment action as a result of his disability. An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage. *Spears v. Mo. Dep't of Corr. & Human Resources*, 210 F.3d 850, 853 (8th Cir. 2000). That may include, for example, termination, cuts in pay or benefits, changed duties, or other changes that affect an employee's future employment prospects. *Wagner v. Campbell,* 779 F.3d 761, 766 (8th Cir. 2015). A transfer to a new position may also be considered an adverse employment action if the plaintiff cannot perform the responsibilities of the new position due to disability. *See Kelleher v. Wal-Mart Stores, Inc.*, 817 F.3d 624, 632 (8th Cir. 2016).

Here it is undisputed that Hernandez was neither discharged nor forced to switch positions, nor did he suffer any reduction in pay because of his shoulder injury. Filing 47 at 9; *see also* filing 54 at 2. So, the only plausible adverse employment action includes Hernandez's allegation that he was medically unable to perform his "belly-trim" position. *See* filing 55-1 at 93-95.

7

But there is no evidence in the record to substantiate that claim. *Kelleher*, 817 F.3d at 632. To the contrary, Hernandez admits that his "belly trim" position neither required him to lift his arm above shoulder level, *see* filing 47 at 17, nor perform work beyond eighteen inches of his body, *see* filing 47 at 28; *see also* filing 47 at 48. Hernandez also acknowledges that he was generally not required to lift over ten pounds. Filing 47 at 17. In fact, the only time the "belly-trim" position had the *potential* to violate Hernandez's work restrictions was if there was a "pile up" or "jam" on the production line. *See* filing 47 at 59. But when that did happen, Hormel Foods gave Hernandez specific orders not to lift or move jammed pork bellies. Filing 47 at 17; *see also* filing 47 at 59. Instead, Hernandez was instructed to notify his supervisor and ask for help in alleviating the jam. Filing 47 at 17; *see also* filing 47 at 59.

So, although Hernandez may have been apprehensive about staying in his "belly trim" position, there is no evidence that a medical professional or any member of management determined that Hernandez was medically unable to perform his "belly trim" position so long as he did not lift the bellies in the event of a pile up. And while "[t]o be 'adverse' the action need not always involve termination or even a decrease in benefits or pay . . . not everything that makes an employee unhappy is an actionable adverse action." *Sellers v. Deere & Co.*, 791 F.3d 938, 941 (8th Cir. 2015). Instead, Hernandez must be unable to perform the job as a result of his disability. *Kelleher*, 817 F.3d at 632.

There is no evidence to suggest that is the case here. Accordingly, Hernandez has not made out a prima facie case of discrimination and as such, the Court will grant Hormel Foods's motion for summary judgment.[2]

---

[2] The Court also notes that even if Hernandez could establish a prima facie case of disability discrimination, his reasonable accommodation claim would still fail. Indeed, the crux of Hernandez's complaint stems from his belief that he should have been transferred to a

8

## NATIONAL ORIGIN CLAIM

Next, Hernandez alleges that he was discriminated against based on his national origin. Those allegations are brought under Title VII and the NFEPA. Those claims are also functionally identical such that the Court will consider them together. *See Al-Zubaidy v. TEK Indus., Inc.*, 406 F.3d 1030, 1039-40 (8th Cir. 2005); *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1056 (8th Cir. 1997).

Hernandez has alleged nothing suggesting direct evidence of discrimination. *See Torgerson v. City of Rochester*, 643 F.3d 1031, 1044 (8th Cir. 2011) (direct evidence is evidence showing specific link between alleged discriminatory animus and challenged decision). So, his claim depends on the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), pursuant to which a plaintiff's prima facie case requires him to establish that (1) he was a member of a protected class, (2) he was qualified for his job, (3) he suffered an adverse employment action, and (4) there are facts that give rise to an inference of discrimination. *Holland v. Sam's Club*, 487 F.3d 641, 644 (8th Cir. 2007).

But as Hormel Foods correctly points out, Hernandez's national origin discrimination allegation fails for at least two reasons. First, as discussed above, there is no evidence that Hernandez suffered an adverse employment action. *See* filing 47 at 8; *see also* filing 54 at 2. And second, there is nothing in the record to support an inference of discrimination: there are no allegations

---

different position even if his "belly trim" position could be performed with some accommodation. Filing 47 at 5. But under the ADA an employer is not required to provide a disabled employee with an accommodation that is ideal from the employee's perspective, only an accommodation that is reasonable. *See Cravens v. Blue Cross & Blue Shield of Kan. City*, 214 F.3d 1011, 1019 (8th Cir. 2000). And here, there is no evidence in the record to suggest that the accommodation was not reasonable. *See* 42 U.S.C. § 12111(9)(B).

that anyone from Hormel made negative statements about his Mexican origin, *see* filing 47 at 31, nor allegations that Hernandez believed he was treated differently because he is Hispanic, *see* filing 47 at 38, nor does Hernandez allege that he was targeted because of his Hispanic heritage, *see* filing 47 at 39.

In other words, the only evidence before the Court is that Hernandez was born in Mexico—but nothing else. That is plainly insufficient to state a claim for actionable discrimination—much less survive a motion for summary judgment. *See Hager v. Arkansas Dep't of Health*, 735 F.3d 1009, 1015 (8th Cir. 2013); *Williams v. Arkansas Dep't of Correction*, 438 F. App'x 535, 536 (8th Cir. 2011); *see also Hervey v. Cty. of Koochiching*, 527 F.3d 711, 722 (8th Cir. 2008); *Miller v. Coca-Cola Enterprises, Inc.*, 178 F. App'x 583, 585 (8th Cir. 2006); *Palesch v. Missouri Comm'n on Human Rights*, 233 F.3d 560, 566 (8th Cir. 2000); *Shannon v. Ford Motor Co.*, 72 F.3d 678, 683-84 (8th Cir. 1996); *cf. Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 522 (8th Cir. 2010). Accordingly, the Court will grant Hormel Food's motion for summary judgment as to his claim of national origin discrimination.

## WORKERS' COMPENSATION RETALIATION

Last, Hernandez claims that Hormel Foods retaliated against him because he filed a workers' compensation claim for his work related injuries.[3] *See* filing 15 at 4. While filing a workers' compensation claim is not protected under the ADA, it is protected under Nebraska common law. *See, e.g., Trosper*

---

[3] It is not entirely clear to the Court what period of time Hernandez is referring to for purposes of his retaliation claim. But because there has been no demotion, discharge, or any change in employment at any time, the Court does not find this oversight particularly significant.

*v. Bag 'n Save*, 734 N.W.2d 704, 707 (Neb. 2007).; *see also Brown v. Reg'l West Med. Ctr.*, 300 Neb. 937, 946 (2018). But claims for workers' compensation retaliation require evidence of discharge or demotion. *Trosper*, 734 N.W.2d at 707. And as discussed above, there is simply no evidence before the Court that Hernandez was discharged or demoted in any way. *See* filing 47 at 8; *see also* filing 54 at 2. Accordingly, Hernandez's retaliation claim fails as a matter of law, and the Court will grant Hormel Food's motion for summary judgment on Hernandez's workers' compensation retaliation claim.

IT IS ORDERED:

1. Hormel Foods' motion for summary judgment (filing 45) is granted.

2. A separate judgment will be entered.

Dated this 6th day of September, 2018.

BY THE COURT:

John M. Gerrard
United States District Judge